## NATIONAL SUPPLY CO. v. AMERICAN MFG. CO. OF TEXAS.

### No. 8760.

Circuit Court of Appeals, Fifth Circuit.

Dec. 9, 1938.

Edward A. Lawrence, of Pittsburgh, Pa., and B. L. Agerton, of Fort Worth, Tex., for appellant.

Jack A. Schley, of Dallas, Tex., and U. M. Simon, of Fort Worth, Tex., for appellee.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

SIBLEY, Circuit Judge.

The suit is for infringement of claims 4, 5 and 6, of patent No. 1,823,163 to I. B. Picard for a pumping jack, application filed Nov. 20, 1930. The district court held the claims invalid for want of invention. We agree.

Picard states in his application: "The principal object of this invention is to provide a pumping jack with links connected between the jack frame and the pump rod so as to provide an approximately straight line travel of the pump rod." He mentions no particular difficulty which he had to overcome. In this record he does not testify, though still employed by plaintiff, and we have no account from him of the conception of his asserted invention. His superior, Mahan, testifies: "I assigned him the problem of developing this hanger and he developed it. The occasion of the invention was we were attempting to bring onto the market a heavy duty pumping jack suitable for heavy volumes and deep wells." So far as appears Picard, a mechanical engineer, forthwith designed the jack which was patented. The claims in controversy cover a combination of elements including principally these: "a pumping arm oscillable on a horizontal axis", commonly called a walking beam; "a pendent link pivotally supported by the arm, a second link pivotally supported by the first link", which as described and illustrated are like two links of a huge bicycle chain; "a swivel block carried by the lower end of the second link", a commonly used part of oil well pumps; "a vertically reciprocating pump-operating rod attached to the swivel block", which is the usual pump actuator; "an outwardly facing abutment carried by the arm adjacent to and opposite the inner face of the lower ends of the links, and means carried by the lower portion of the links and adapted to engage the outer face of the abutment and space the upper end of the second link and the swivel block from the abutment", which seems to be claimed as the novelty of the invention; and lastly "the spacing means contacting with the abutment when the arm is above a predetermined position thereby giving the said rod a substantially straight-line travel", which is the main object in view. It is shown that the walking beam with chain or link connections is a very old mechanical device. It has long been used to pump oil wells. In these wells a lifting pump is used. The

pump rod is packed at the top and must move straight up and down or the rod will be bent, and the packing worn and friction increased. The weight of the rod and plunger carries the rod down. The end of the walking beam pulls it up. When in the late 1920's oil wells began to be made 4,000 feet and more deep, the weight to be lifted, including the column of fluid, was often as much as six or eight tons. The stroke desired was 48 inches or more. Pumping jacks which had been used in shallow wells and with less stroke had of course to be made larger and stronger and with better means of lubrication. Picard's jack is concededly well designed and effective and has proven very salable, but we think involved only engineering skill in its production not entitling him to a monopoly. The "standard rigs" at first used on deep wells were heavy, high jacks, with a long walking beam so that the arc described by its end in a 48 inch stroke would be one of only a few degrees, and would draw the pump rod but slightly from the perpendicular at the upper and lower part of the stroke. These were operated each by its own engine or motor, and were expensive to build and run. The smaller jacks long used in shallow wells could be made heavier, and some of them had means for keeping the pump rod perfectly true through the whole stroke, although the walking beam was relatively short. One means was to have the working half of the beam really the sector of a circle, around the arc of which a wire cable or chain was passed from the swivel block to the top of the sector. As this sector oscillated up and down the cable or chain always pulled from a point in the arc and therefore equidistant from the center of oscillation, and always directly over the center of the pump rod. Some of the jacks used had two or more long hooks or links, instead of a many linked chain. These could all have been made heavy enough to work in a deep well, but cables would wear and break, and chains too, for they could not be efficiently lubricated. The Picard jacks, and those made by defendant, have excellent lubrication because the pivots connecting the links to each other and to the jack arm and to the swivel block are in an oil bath. But lubrication is not so much as mentioned in Picard's patent. We do not think that the substitution of Picard's two links, of the bicycle chain type, which do not twist, and lend themselves to effective lubrication, for the chains or hook links of the older jacks was invention. Such links

had been used on heavy duty pumps before. The reduction of the links to two hurt to some extent the straight line pull on the pump rod but reduced the number of parts and bearings. Defendant makes other jacks which are preferred by some users, on which only one link is used. The "abutment" of which much is made is only a remnant of the old jack sector. Since the two links make a broken curve and not a perfect one as they bend during the oscillation, they are supported not by a perfect curve but only by that portion needed to keep the end of each link at the required distance from the center of oscillation, so as not to pull the pump rod out of alignment as the walking beam goes up. There is no new principle, no new means, no inventive combination of elements. Without discussing prior patents and unpatented jacks, none of which may be a complete anticipation, we conclude that no such stride in the pumping art appears as entitles the assignees of Picard to a monopoly under the claims examined.

Judgment affirmed.